1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PAMELA BROWN,

11          Plaintiff,                         No. 2:11-cv-0665 DAD

12      vs.

13   MICHAEL J. ASTRUE,                        ORDER
     Commissioner of Social Security,

14
            Defendant.

15   _____/

16          This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's cross-

19   motion is denied, the decision of the Commissioner of Social Security (Commissioner) is

20   reversed, and the matter is remanded for further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22          On July 26, 2001, plaintiff filed an application for Supplemental Security Income

23   (SSI) under Title XVI of the Social Security Act (the Act), alleging disability beginning on June

24   14, 2001.  (Transcript (Tr.) at 73-76.)  Plaintiff's application was denied initially and on

25   reconsideration.  (Tr. at 50-59.)  Plaintiff requested a hearing before an Administrative Law

26   Judge (ALJ).  (Tr. at 60-61.)

                                        1

1    However, prior to the administrative hearing, on December 13, 2002, plaintiff

2 again applied for SSI. (Tr. at 77-80.) Plaintiff's SSI claims were consolidated and a hearing was

3 held before an ALJ on March 1, 2004, and a supplemental hearing was held on June 17, 2004.

4 (Tr. at 489, 539.) Plaintiff was represented by a non-attorney representative and testified on her

5 own behalf. The ALJ denied plaintiff's claims on December 15, 2004, (Tr. at 33), and the

6 Appeals Council denied plaintiff's request for review of the ALJ's decision on July 20, 2006.

7 (Tr. at 8.)

8    Plaintiff then sought judicial review by filing a complaint in federal court (2:06-

9 cv-002016-KJM), but shortly thereafter, on September 26, 2006, plaintiff filed another

10 application for SSI, which was granted at the initial level. (Tr. at 565.) The parties, therefore,

11 stipulated to voluntary remand of the federal action with instructions to the ALJ to determine

12 whether plaintiff should have been found disabled prior to September 26, 2006. (Tr. at 608-13.)

13    On June 11, 2008, the ALJ affirmed that plaintiff was disabled as of September

14 26, 2006, but found that plaintiff was not disabled prior to that date. (Tr. at 574-89.) On June 1,

15 2010, the Appeals Council remanded the case to a different ALJ for reconsideration. (Tr. at 632-

16 36.)

17    Plaintiff and her counsel attended the administrative hearing on remand before the

18 ALJ on October 6, 2010. (Tr. at 745.) In a decision issued on November 8, 2010, the ALJ found

19 that plaintiff was disabled beginning on September 26, 2006, but not prior to that date. (Tr. at

20 562-71.) The ALJ entered the following findings:

21         1. The claimant did not engage in substantial gainful activity at
           any time relevant to this decision (20 CFR §416.920(b) and
22         §416.971).

23         2. During the period under adjudication, the claimant had the
           following severe impairment: rheumatoid arthritis (20 CFR
24         §416.920(c)).

25         3. During the period under adjudication, the claimant did not have
           an impairment or combination of impairments that meets or
26 /////

2

1   medically equals one of the listed impairments in 20 CFR Part 404,
    Subpart P, Appendix 1 (20 CFR §416.920(d)).

2

3   4.  After careful consideration of the entire record, the undersigned
    finds that during the time period under adjudication the claimant
    had the residual functional capacity to: lift less than 10 pounds
4   frequently, but up to 20 pounds occasionally; sit, with regular
    breaks and a sit-stand option, for six to eight hours in an eight-hour
5   day; stand or walk, with regular breaks and a sit-stand option, for
    two hours in an eight-hour work day; occasionally climb, kneel,
6   stoop, crouch and crawl; occasionally push and pull with her upper
    extremities; and avoid forceful and repetitive gripping and twisting
7   activities with her bilateral hands.  This is consistent with a range
    of light work.  Light work involves lifting no more than 20 pounds
8   at a time with frequent lifting or carrying of objects weighing up to
    10 pounds.  By definition a job is in this category when it involves
9   sitting most of the time with some pushing and pulling of arm or
    leg controls (20 CFR §404.1567(b)).

10

11  5.  The claimant is able to perform her past relevant work as it is
    generally performed (20 CFR §416.965).

12  6.  The claimant was 43 years old on the alleged onset date of
    disability.  This is defined in the regulations as a younger
13  individual (20 CFR §416.963).

14  7.  The claimant has a high school education and is able to
    communicate in English (20 CFR §416.964).

15

16  8.  The claimant has an unskilled and semi-skilled work
    background[.]

17  9.  The claimant does not have transferable skills.

18  10.  In addition to the claimant being able to perform her past
    relevant work prior to September 25, 2006, considering the
19  claimant's age, education, work experience, and residual functional
    capacity, there were a significant number of jobs in the national
20  economy that an individual so limited could have performed (20
    CFR §416.960(c) and §416.966).

21

22  11.  The claimant was not disabled prior to September 26, 2006,
    but became disabled on that date and has continued to be disabled
    through the date of this decision (20 CFR §416.920(g)).

23

24  (Tr. at 15-22.)

25          The ALJ's decision became final and plaintiff sought judicial review pursuant to

26  42 U.S.C. § 405(g) by filing the complaint in this action on March 10, 2011.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.

1    Step two:  Does the claimant have a "severe" impairment?  If so,
     proceed to step three.  If not, then a finding of not disabled is
2    appropriate.

3    Step three:  Does the claimant's impairment or combination of
     impairments meet or equal an impairment listed in 20 C.F.R., Pt.
4    404, Subpt. P, App. 1?  If so, the claimant is automatically
     determined disabled.  If not, proceed to step four.
5
     Step four:  Is the claimant capable of performing his past work?  If
6    so, the claimant is not disabled.  If not, proceed to step five.

7    Step five:  Does the claimant have the residual functional capacity
     to perform any other work?  If so, the claimant is not disabled.  If
8    not, the claimant is disabled.

9    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

10          The claimant bears the burden of proof in the first four steps of the sequential

11   evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

12   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

13   (9th Cir. 1999).

14                                      **APPLICATION**

15          Plaintiff argues that the ALJ committed one principal error in finding her not

16   disabled prior to September 26, 2006.  Specifically, plaintiff alleges that the ALJ failed to ask the

17   Vocational Expert (VE) whether his testimony was consistent with the Dictionary of

18   Occupational Titles and that the VE's testimony was in fact inconsistent with the Dictionary of

19   Occupational Titles.  Defendant disputes plaintiff's contention, arguing that the VE's testimony

20   did not conflict with the Dictionary of Occupational Titles but instead clarified its application to

21   plaintiff's case based upon the VE's specialized knowledge.

22          In his November 8, 2010 decision, the ALJ found at step four that plaintiff had the

23   residual functional capacity to, among other things, sit, with regular breaks and a sit-stand option,

24   for six to eight hours in an eight-hour day.  (Tr. at 568.)  The ALJ found plaintiff's residual

25   functional capacity to be consistent with a range of light work and found that plaintiff was able to

26   perform her past relevant work as a cashier II because that job does not require forceful and

1    repetitive gripping and twisting and because "some cashier II jobs (parking lot, cafeteria, ticket

2    booth) allow for a sit-stand option . . ." (Tr. at 569.)

3            The ALJ then proceeded to step five and found that there were a significant

4    number of jobs in the national economy plaintiff could have performed.  Specifically, the ALJ

5    stated:

6                To determine the extent to which [plaintiff's additional] limitations
                 erode the occupational base, the undersigned Administrative Law
7                Judge asked the vocational expert whether jobs exists in the
                 national economy for an individual with the claimant's age,
8                education, work experience, and residual functional capacity
                 described above.  The vocational expert testified that taking into
9                account all of these factors, in additional (sic) to being able to
                 perform the cashier II jobs as previously mentioned, such
10               individual would be able to perform the requirements of
                 representative occupations such as gate guard . . .information clerk
11               . . . and usher . . . .  The vocational expert's analysis is credited, as
                 it is not contradicted and his sources of data are considered
12               reliable.  His testimony is consistent with the information found in
                 the DOT (SSR 00-04p) . . . . .

13
                 Based on the testimony of the vocational expert, the undersigned
14               concludes that prior to September 26, 2006, the claimant was
                 capable of returning to her past relevant work as a cashier II as it is
15               generally performed, [and] was capable of making a successful
                 adjustment to work that existed in significant numbers in the
16               national economy.

17   (Tr. at 570.)

18           At the October 6, 2010 administrative hearing, however, the ALJ did not ask the

19   VE if his testimony conflicted with the Dictionary of Occupational Titles.[1]  The ALJ did ask the

20   VE to assume an individual who has the vocational profile of plaintiff and to assume the

21   individual was limited as "described in Exhibit 40-F." (Tr. at 771.)  The ALJ then asked the VE

22   if that individual would be able to do her past relevant work.  The VE answered that "she could

23   return to the cashier job." (Tr. at 772.)  The VE then stated that such an individual could also

24

25           [1]  Defendant does not address whether the ALJ failed to inquire of the VE whether his
     testimony conflicted with the Dictionary of Occupational Titles.  The court has reviewed the
26   administrative hearing transcript and finds that the ALJ failed to make that inquiry.

1   work as a gate guard, information clerk or usher, because those jobs "would require only

2   occasional use of the hands."  (Tr. at 773.)

3          The ALJ pointed out to the VE that Exhibit 40-F "speaks of a standing and

4   walking capacity of up to two hours in an eight hour workday."  (Tr. at 774.)  The VE then

5   revised his answer, stating that such a standing and walking limitation would preclude returning

6   to the cashier job "as she was normally doing it," but that "there are some unskilled cashier jobs

7   which have a sit/stand option referred to as a cashier II, which includes parking lot cashiers,

8   cashiers in cafeterias, ticket sellers."  (Tr. at 774.)  The VE did not, thereafter, address how the

9   plaintiff's identified standing and walking limitation altered his answer, if at all, with respect to

10  the jobs of gate guard, information clerk or usher.

11         "The DOT classifies Cashier II as 'light work,' which may require, inter alia, 'a

12  good deal of walking or standing.'"  Barat v. Astrue, No. C 09-02536 MHP, 2011 WL 2446280,

13  at *5 (N.D. Cal. June 17, 2011) (quoting 20 C.F.R. § 404.1576(b)).  See also DOT 211.462-010,

14  1991 WL 671840 (stating that job of cashier II requires the strength to perform light work).  The

15  DOT also classifies the jobs of gate guard, information clerk and usher as requiring light work.

16  See DOT 372.667-030; DOT 237.367-018; and DOT 344.677-014.

17         "[T]he full range of light work requires standing or walking for up to two-thirds of

18  the workday."  Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984).  Moreover, the DOT

19  does not mention a sit/stand option.  See Smith v. Astrue, No. C 09-03777 MHP, 2010 WL

20  5776060, at *12 (N.D. Cal. Sept. 16, 2010) ("This court holds that because the DOT does not

21  address sit/stand options, the potential inconsistency between the vocational expert's testimony

22  and DOT warrants further inquiry on remand.").

23         An ALJ may not rely on a VE's testimony regarding the requirements of a

24  particular job without first inquiring whether the testimony conflicts with the Dictionary of

25  Occupational Titles (DOT).  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).  See also

26  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  However, the failure to make the requisite

1   inquiry is harmless where there is no conflict or where the vocational expert's testimony provides

2   sufficient support to justify any potential conflict.  Massachi, 486 F.3d at 1154 n.19 (failure to

3   follow SSR 00-4p would have been harmless if there had been no conflict between the opinion

4   and DOT); see also Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in

5   failing to ask the vocational expert about possible conflicts between his testimony and the

6   Dictionary of Occupational Titles was harmless, since no such conflict appears to exist."); Jones

7   v. Astrue, No. 2:09-cv-03214 KJN, 2011 WL 1253727, at *10 (E.D. Cal. Mar. 31, 2011)

8   (harmless error found where failure to ask was "inconsequential to the ultimate non-disability

9   determination"); Miller v. Astrue, No. Civ S-08-368 KJM, 2009 WL 800227, at *4 (E.D. Cal.

10  Mar. 25, 2009) (harmless error found because "plaintiff fails to show any conflict between the

11  DOT and the vocational expert's testimony"); Lao v. Astrue, No. Civ. S-06-2714 EFB, 2008 WL

12  3863698, at *11-12 (E.D. Cal. Aug. 18, 2008) ("[T]he ALJ's failure to inquire about the conflict

13  was harmless because there was no conflict[.]").  "In order for an ALJ to accept vocational expert

14  testimony that contradicts the Dictionary of Occupational Titles, the record must contain

15  'persuasive evidence to support the deviation.'"  Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir.

16  2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  See also Tommasetti v.

17  Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (error found where "[t]he ALJ did not identify what

18  aspect of the VE's experience warranted deviation from the DOT[.]")

19          Here, there was a conflict between the VE's testimony regarding the requirements

20  of the cashier II job and the DOT's definition of the requirements of the cashier II job.  See Barat,

21  2011 WL 2446280, at *5 ("Although the DOT is silent regarding the sit/stand option for the

22  Cashier II position, there can be a conflict, for purposes of SSR 00-4p, between VE testimony

23  that a particular position has a sit/stand option and a DOT classification of 'light work.'"); Smith,

24  2010 WL 5776060, at *11-12 ("District courts in the Northern District of California have

25  construed Massachi v. Astrue to mean that where an expert opines on an issue about which the

26  DOT is silent, a conflict exists . . ."); Pangle v. Astrue, No. 1:08cv01760 DLB, 2010 WL

1   668912, at *11 (E.D. Cal. Feb. 23, 2010) ("In this action, the DOT did not indicate if the

2   assembler or inspector positions could be performed with a sit/stand option, therefore creating a

3   conflict that warranted inquiry."); see also Novak v. Commissioner of Social Sec. Admin., Civil

4   Action No. 9:08-2687-HFF-BM, 2009 WL 1922297, at *2 (D. S.C. June 30, 2009) ("[O]ther

5   courts in the district have treated a VE's testimony regarding a sit/stand option as a conflict with

6   the DOT."); cf. Hernandez v. Astrue, No CV10-3142 AJW, 2011 WL 223595, at *4 (C.D. Cal.

7   Jan. 21, 2011) ("In other words, the DOT indicates that a parking lot cashier is simply another

8   name for a cashier II job as defined by the DOT . . . .  Nothing in the DOT occupational

9   definition suggests that the job of parking lot cashier is less physically demanding . . . than

10   cashier II jobs as a whole.").[2]

11           However, because the VE was not asked, and therefore did not acknowledge, that

12   there was a conflict between his testimony and the DOT with respect to the sit/stand option,

13   neither the VE's testimony nor the ALJ's decision explained or justified the apparent conflict

14   between the two.  See generally Pearce v. Astrue, No. C09-04MJP, 2009 WL 3698514, at *4

15   (W.D. Wash. Nov. 3, 2009) (where VE "merely testified" that there could be a sit/stand option,

16   the testimony was not sufficient to provide a reasonable explanation for the deviation).  Indeed,

17   the ALJ's decision inaccurately stated that the VE's testimony was "consistent with the

18   information found in the DOT."  (Tr. at 570.)

19   /////

20

21           [2] If the jobs identified by the VE under the category of cashier II jobs would not require
     "a good deal of walking or standing" and instead "involves sitting," it would seem the jobs as
     described by the VE would have many of the characteristics of sedentary work, not light work.

22   Compare § 404.1567(a) ("Although a sedentary job is defined as one which involves sitting, a
     certain amount of walking and standing is often necessary in carrying out job duties."), with §

23   404.1567(b) ("Light work . . . . requires a good deal of walking or standing . . ."), and Social
     Security Ruling 83-14, 1983 WL 31254 ("The major difference between sedentary and light work

24   is that most light jobs - particularly those at the unskilled level of complexity-require a person to
     be standing or walking most of the workday.").  See generally Durkee v. Astrue, No. CV 11-

25   6564-PLA, 2012 WL 3150587, at *5 (C.D. Cal. 2012) ("If the modified cashier II job would not
     require carrying more than 10 pounds at a time and involves sitting, it has the characteristics of a

26   sedentary job, not a light job.").

1    The court finds that the ALJ failed to inquire of the VE whether his testimony

2    concerning plaintiff's past relevant work and the cashier II job conflicted with the DOT.  The

3    court also finds that there was in fact a conflict between the two and that the VE's testimony did

4    not provide sufficient support to justify that conflict.  Moreover, although it is entirely unclear if

5    the VE's testimony concerning the jobs of gate guard, information clerk and usher contemplated

6    plaintiff's walking and standing limitation, each of those positions would present the same

7    conflict between the DOT and any asserted sit/stand option.  Accordingly, the court cannot find

8    that the ALJ's failure to make the requisite inquiry in this case was harmless.  See Durkee v.

9    Astrue, No. CV 11-6564-PLA, 2012 WL 3150587, at *5 (C.D. Cal. 2012) ("The Court cannot

10   confidently conclude that the ALJ's step five determination is supported by substantial evidence,

11   because it was made in reliance on VE testimony that was far from clear."); Barat, 2011 WL

12   2446280, at *5 (finding that "[g]iven the apparent conflict between the VE testimony and the

13   DOT" concerning the requirements of the cashier II job and a sit/stand option, "the ALJ had an

14   affirmative responsibility to obtain a reasonable explanation for the conflict" and "the ALJ's

15   decision must be vacated"); Valenzuela v. Astrue, No. C 08-04001 WHA, 2009 WL 1537876, at

16   *4 (N.D. Cal. June 2, 2009) ("Since the ALJ failed to comply with SSR 00-4p in resolving a

17   potential conflict, it cannot be determined whether the ALJ properly relied on VE testimony.  As

18   a result, it cannot be determined whether substantial evidence supported the ALJ's finding in step

19   five.").

20        For the reasons set forth above, the court concludes that plaintiff is entitled to

21   summary judgment in her favor on this ground.

22                              **CONCLUSION**

23        The decision whether to remand a case for further proceedings or to simply award

24   benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

25   1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit has stated that,

26   "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served

1   by further administrative proceedings, or where the record has been thoroughly developed."

2   Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396,

3   1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.

4   Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304;

5   Varney, 859 F.2d at 1401.

6           Here, the court finds it necessary to remand the case for the ALJ to address the

7   conflict between the VE's testimony and the DOT's classifications.  A proper disability

8   determination cannot be made absent that inquiry.

9           Accordingly, IT IS HEREBY ORDERED that:

10           1.  Plaintiff's motion for summary judgment (Doc. No. 14) is granted;

11           2.  Defendant's cross-motion for summary judgment (Doc. No. 15) is denied;

12           3.  The Commissioner's decision is reversed; and

13           4.  This matter is remanded for further proceedings consistent with this order.

14   DATED: September 14, 2012.

15

16   _____

17   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

18

19

20   DAD:6
     Ddad1/orders.soc sec/brown0665.order

21

22

23

24

25

26